**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**PHYLLIS LANGFORD, et al.**                                                    **PLAINTIFFS**

**v.**                          **Case No. 3:12-cv-00111 KGB**

**JIMMY WILKINS, in his official**
**capacity as Superintendent, and**
**HUGHES SCHOOL DISTRICT NO. 27**                                  **DEFENDANTS**

**OPINION AND ORDER**

Before the Court are several motions for summary judgment filed by defendants Jimmy

Wilkins, in his official capacity as Superintendent, and Hughes School District No. 27

(collectively "HSD").  The HSD has filed motions for summary judgment against the claims of

plaintiffs Phyllis Langford (Dkt. No. 88), Michael Manning (Dkt. No. 97), and Dovie Wolf (Dkt.

No. 91).  All of these plaintiffs have responded in opposition to the respective motions for

summary judgment (Dkt. Nos. 111, 115, 113), and the HSD has replied to each of these

responses (Dkt. Nos. 126, 125, 127).

The Court addresses separately the facts surrounding each plaintiff's claims below.

Thereafter, the Court addresses each motion for summary judgment in turn.  For the following

reasons, the Court grants the HSD's motion for summary judgment against Ms. Langford (Dkt.

No. 88); grants the HSD's motion for summary judgment against Mr. Manning (Dkt. No. 97);

and grants the HSD's motion for summary judgment against Ms. Wolf (Dkt. No. 91).

## I.      Background

### A.      Phyllis Langford

Ms. Langford has not filed a statement of disputed facts or otherwise responded to the

HSD's statement of undisputed material facts related to her claims.  Pursuant to Local Rule 56.1,

the factual allegations in the moving party's statement of material facts are treated as undisputed "unless controverted by" the nonmoving party's "separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tired."  U.S. Dist. Ct. Rules Ark., LR 56.1(b)-(c).  The Court deems admitted all factual allegations in HSD's statement of undisputed material facts not controverted by Ms. Langford.  *See Robinson v. American Red Cross,* 753 F.3d 749, 754-55 (8th Cir. 2014).

HSD hired Ms. Langford, a Caucasian woman, to the position of school counselor in July 2010.  In this position, Ms. Langford provided direct counseling services to students from kindergarten through 12th grade and completed various administrative duties.  Ms. Langford's 2010-2011 employment contract was set to expire on June 30, 2011.  On April 11, 2011, Ms. Langford received a letter from HSD Superintendent Mr. Wilkins.  This letter stated Ms. Langford's contract would not be renewed because the amount of $1,000.00 for Grade Quick would be deleted from her contract (Dkt. No. 88-2, at 1).  Instead, Mr. Wilkins recommended to the school board that HSD extend to Ms. Langford a proposed new contract for employment as school counselor in the 2011-2012 school year (*Id.*).  The letter also informed Ms. Langford that, because of the non-renewal of her 2010-2011 contract, she had the right to file a written request for a hearing with the school board within 30 days after receipt of the notice, citing Ark. Code Ann. § 6-17-1509 (*Id.*)

Ms. Langford received a copy of the proposed new contract from the HSD for the 2011-2012 school year on May 17, 2011; the proposed new contract purports to be between Ms. Langford and the HSD.  Mr. Wilkins instructed Ms. Langford that she needed to return the proposed contract within 30 days (Dkt. No 90, ¶ 15; Dkt. No. 88-4, at 16).  Ms. Langford neither signed nor returned the proposed contract for the 2011-2012 school year.

In early June 2011, Ms. Langford met with Mr. Wilkins and Julie Coveney, who was the former Federal Programs Coordinator for the HSD, to discuss plans for the following school year and what Mr. Wilkins expected from Ms. Langford.  Ms. Langford and Mr. Wilkins discussed the amount of time she should be spending on guiding students, as compared to conducting administrative duties.  During that meeting, Ms. Langford requested from Mr. Wilkins a classroom and secretarial support (Dkt. No. 90, ¶ 20).  Mr. Wilkins replied that was not possible because the HSD did not have enough money for additional support (Dkt. No. 90, ¶ 22).  Ms. Langford maintains that they also discussed her proposed contract and that she indicated to Mr. Wilkins at the early June 2011 meeting that she had not "turned in [her] contract because [she] didn't know if [she] was going to come back" (Dkt. No. 88-1, at 27).

Ms. Langford found the administrative side of her job "overwhelming" and "very stressful," spending approximately 90% of her time preparing academic transcripts, report cards, and other administrative tasks as opposed to guidance sessions with students (Dkt. No. 90, ¶ 9).  Ms. Langford testified that she was "burned out" and not sure if she wanted to return to the HSD for another school year (Dkt. No. 90, ¶ 17).  Despite being employed by the HSD for only one year, Ms. Langford was already looking for positions at other school districts (Dkt. No. 90, ¶ 18).  According to Ms. Langford, during the early June 2011 meeting, Mr. Wilkins stated:  "if you want to come back, we welcome you back, if you don't want to come back, we understand and that will be fine" (Dkt. No. 88-1, at 32).

On June 30, 2011, Mr. Wilkins called another meeting with Ms. Langford to discuss the upcoming year.  At this meeting, Ms. Langford indicated once again that she did not have enough time to complete all of her responsibilities without additional resources (Dkt. No. 90, ¶ 28).  She testified in her deposition about her comments at this meeting:

> I just said there is no way possible for me to do all that I'm doing right now and to add two hours for that, I never take lunch, I have got resources to use, I have to have time to find it.  And he said you just plan your day out. That was his – you just make it work, you can get it done.

(*Id.*).

In an affidavit she submits in response to defendants' motion for summary judgment, Ms. Langford claims that, at this June 30, 2011, meeting, Mr. Wilkins instructed Ms. Langford to inform him or Gheric Bruce by the close of business on July 5, 2011, whether Ms. Langford intended to return to the HSD for the 2011-2012 school year (Dkt. No. 112, at 7).  Ms. Langford states that she informed Mr. Bruce on the morning of July 5, 2011, that she intended to return for the new school year but that Mr. Wilkins informed her later that afternoon that the school had already hired someone else to serve as school counselor for the 2011-2012 school year.  Ms. Langford contends that the HSD hired an African American male to replace her, whom she contends did not have the qualifications to perform the job (*Id.* at 8).

At some point on July 5, 2011, Ms. Langford received a letter from Mr. Wilkins.  This letter stated:  "Since your contract was not passed in within the specified time limit, the position of Counselor was considered vacant.  A replacement has already been signed" (Dkt. No. 88-4, at 35).  Ms. Langford neither appealed the school's decision to hire another person for the school counselor position nor requested a hearing on the matter before the school board.  Ms. Langford maintains that she did not request a hearing because she believed such a hearing would be futile (*Id.* at 7-8).

HSD's proposed contract between Ms. Langford and the HSD incorporated the Certified Personnel Policies of the HSD.  As HSD points out, these Certified Personnel Policies state:

> If a teacher who has been offered a contract fails to sign and return such contract to the superintendent within thirty (30) days after the contract is issued, then the contract shall be null and void and the position shall be declared vacant.  The

4

superintendent may at his/her discretion extend this time period by a specified number of days through <u>written</u> agreement with the employee.

(Dkt. No. 97-2, at 2).

In her deposition, Ms. Langford testified that, in her 25 years as a teacher, she signed a contract every year except one. She indicated that the only time she did not sign a contract was when she began working as a junior high counselor for the South Mississippi County School District. She did not sign a contract for this position because the contract mislabeled her position as "Rivercrest High School counseling position" (Dkt. No. 88-1, at 11).

Ms. Langford currently works as a school counselor for the Osceola School District, where she was hired in June 2012. In her application for employment with the Osceola School District, Ms. Langford stated that she left the HSD because she had "too many grades to do" (Dkt. No. 88-1, at 52).

On November 15, 2011, Ms. Langford filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") claiming that the HSD discharged her because of her race. The EEOC dismissed Ms. Langford's charge and mailed a notice of rights to her on January 31, 2012. Ms. Langford maintains that, although she cannot remember the exact date she received this letter, it was no sooner than February 5, 2012. Ms. Langford filed this action on May 4, 2012, alleging a "violation of [her] civil rights (racial discrimination), violations of federal due process and equal protection, the Arkansas Teacher Fair Dismissal Act, and breach of contract" (Dkt. No. 1, at 2).

### B.      Michael Manning

Mr. Manning has not filed a statement of disputed facts or otherwise responded to HSD's statement of undisputed material facts related to his claims. The Court deems admitted all

factual allegations in the HSD's statement of undisputed material facts not controverted by Mr. Manning.  *See Robinson*, 753 F.3d at 754-55.

In 2008, the HSD hired Mr. Manning for the position of "curriculum coordinator."  This position required Mr. Manning to have knowledge of the curriculum at HSD and to work with teachers and improve the performance of the school.  Prior to Mr. Manning's employment at HSD, the district did not employ anyone with the title of curriculum coordinator, a position that the Arkansas Department of Education does not require school districts to maintain.

In early 2011, the HSD released Superintendent Ray Nassar from his position, and the school board hired Mr. Wilkins as the new superintendent.  On April 16, 2011, Mr. Manning received a letter that formally notified him of Mr. Wilkins's recommendation that the school board, pursuant to a district-wide reduction in force, or "RIF," eliminate the position of curriculum coordinator.  This letter also notified Mr. Manning of his right to request a hearing with the school board.  Mr. Manning requested such a hearing, which was held on May 10, 2011. The school board followed Mr. Wilkins's recommendation and eliminated the curriculum coordinator position.

Pursuant to the district's policy regarding reduction in force action, the HSD offered to Mr. Manning a teaching position as a fifth and sixth grade social studies and science teacher. Mr. Manning received this offer by letter on July 7, 2011.  According to the HSD policy, Mr. Manning, like other employees, had 10 days to accept or reject the offer of employment.  On July 25, then-principal Gheric Bruce emailed Mr. Manning about the outstanding offer and requested that Mr. Manning sign and return the offer on July 26, 2011, to accept the position.  Mr. Manning replied that he was out of town and would not be back until July 27, 2011.  Mr. Bruce then allowed Mr. Manning until July 27, 2011, to return an executed contract.  Although Mr.

Manning claims that he verbally accepted the position, he never returned a signed contract to the HSD.

In October 2011, Mr. Bruce resigned from his position as principal at the HSD. The HSD appointed Sheryl Owens as the interim principal and formally opened and publicized the position the following school year. The HSD formed a hiring committee consisting of both Caucasian and African American members to search for a replacement principal. Along with 15 other individuals, Mr. Manning applied for the position of principal. The committee interviewed several applicants, including Mr. Manning, but ultimately selected Clarence Saulsberry to fill the position. In February 2012, Mr. Manning filed a claim with the EEOC alleging that the HSD racially discriminated against him by eliminating his position of curriculum coordinator, not offering him the position of superintendent or principal, and requiring him to return the contract for the teaching position by the specified date. The EEOC dismissed Mr. Manning's claims.

On September 3, 2013, Mr. Manning joined this suit as a plaintiff. For his individual complaint, Mr. Manning alleges violations of his civil rights under 42 U.S.C. § 1983, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, Title VII, and the ACRA.

### C.    Dovie Wolf

Ms. Wolf has not filed a statement of disputed facts or otherwise responded to the HSD's statement of undisputed material facts related to her claims. The Court deems admitted all factual allegations in the HSD's statement of undisputed material facts not controverted by Ms. Wolf. *See Robinson*, 753 F.3d at 754-55.

Ms. Wolf worked as a registered nurse ("RN") for the HSD from 2001 to 2011. In 2001, Ms. Wolf served the HSD as a part-time RN on an as-needed basis whenever the school's full-time nurse, Carolyn Williams, who is a licensed practical nurse ("LPN"), was absent from work.

The HSD has not employed any other nurses since Ms. Wolf began working there in 2001. For the 2010-2011 school year, Ms. Williams, as an LPN, received an annual salary of $26,433, and Ms. Wolf, an RN, received an annual salary of $39,744.

In May 2011, Jimmy Wilkins recommended to the school board that the district remove the RN position. The HSD states that Mr. Wilkins made this recommendation pursuant to the district-wide reduction in force. Upon making this recommendation, Mr. Wilkins gave notice to Ms. Wolf of the decision to eliminate her position. Ms. Wolf then requested a hearing before the school board, which was held May 5, 2011.

At the hearing, Ms. Wolf had the opportunity to present evidence of why the HSD should not eliminate her position. Ms. Wolf told the school board that the HSD was required by Arkansas law to employ a full-time RN and, therefore, that the HSD could not eliminate her nursing position. Ms. Wolf did not mention discrimination at this hearing. After Ms. Wolf spoke to the school board, Mr. Wilkins stated that he had spoken with the Arkansas Department of Education, which informed him that the HSD was not required to employ a full-time RN. The school board, comprised of both Caucasian and African-American members, unanimously approved the decision to eliminate the RN position. The HSD states that this approval was a cost-saving measure for the district.

On May 4, 2011, Ms. Wolf wrote a letter to the EEOC alleging reverse race discrimination. In the letter, Ms. Wolf stated that she thought the HSD's decision to eliminate her position was contrary to Arkansas law and that the decision was discriminatory. On April 9, 2012, the Department of Justice sent a letter notifying Ms. Wolf of her right to sue under Title VII. Ms. Wolf joined this suit on July 5, 2012. Ms. Wolf alleges that the HSD racially discriminated against her in violation of her civil rights and the Due Process and Equal

Protection Clauses of the Fourteenth Amendment to the United States Constitution.  Ms. Wolf also claims that the HSD's removal of her position violated the Arkansas Public School Employee Fair Dismissal Act and constituted a breach of her contract with the HSD.

## II.    Standard For Analyzing A Motion For Summary Judgment

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.    Claims Brought By Phyllis Langford

Ms. Langford filed this action on May 4, 2012, alleging a "violation of [her] civil rights (racial discrimination), violations of federal due process and equal protection, the Arkansas Teacher Fair Dismissal Act, and breach of contract" (Dkt. No. 1, at 2).

At the outset, the Court addresses Ms. Langford's affidavit and her status as an employee of the HSD (Dkt. No. 112, at 7-8).  Specifically, the Court must determine if Ms. Langford had a valid contract with the HSD for the 2011-2012 school year.  Ms. Langford had not been employed for three successive years with the HSD at the time of these events.  Therefore, under the Teacher Fair Dismissal Act, Ms. Langford qualified as a probationary teacher during 2010-2011.

By letter sent to her on April 11, 2011, Ms. Langford received notice from the HSD Superintendent Mr. Wilkins that her 2010-2011 contract would not be renewed (Dkt. No. 88-2, at 1).  The letter informed Ms. Langford that, because of the non-renewal of her 2010-2011 contract, she had the right to file a written request for a hearing with the school board within 30 days after receipt of the notice, citing Ark. Code Ann. § 6-17-1509 (*Id.*).  She admits she did not do so.

Also in that April 11, 2011, letter, Mr. Wilkins informed Ms. Langford that he recommended to the school board that the HSD extend to Ms. Langford a contract for employment as school counselor in the 2011-2012 school year (*Id.*).  Ms. Langford received a copy of her proposed new contract with the HSD for the 2011-2012 school year on May 17, 2011.  Mr. Wilkins instructed Ms. Langford that she needed to return the contract within 30 days (Dkt. No 90, ¶ 15; Dkt. No. 88-4, at 16).  In her affidavit, Ms. Langford claims that, at the June 30, 2011, meeting, Mr. Wilkins instructed Ms. Langford to inform him or Mr. Bruce by the close of business on July 5, 2011, whether Ms. Langford intended to return to the HSD for the 2011-2012 school year (*Id.*).  Ms. Langford never contends that she returned an executed written contract for 2011-2012.

Instead, she maintains that Mr. Wilkins authorized from her a verbal acceptance of the contract because she had had a flood in her home that destroyed the contract, among other items. She maintains that, on the morning of July 5, 2011, she told Mr. Bruce that she would accept the offer and stay with the HSD (*Id.* at 7). She claims that Mr. Wilkins informed her later that afternoon that the school had already hired someone else to serve as school counselor for the 2011-2012 school year.

As the HSD points out, the Certified Personnel Policies of the HSD state:

> If a teacher who has been offered a contract fails to sign and return such contract to the superintendent within thirty (30) days after the contract is issued, then the contract shall be null and void and the position shall be declared vacant. The superintendent may at his/her discretion extend this time period by a specified number of days through <u>written</u> agreement with the employee.

(Dkt. No. 97-2, at 2). By Arkansas statute, "[t]he personnel policies of all school districts shall be considered to be incorporated as terms of the licensed personnel contracts and shall be binding on the licensed personnel and the school district." Ark. Code Ann. § 6-17-204(a). In other words, this provision is incorporated into the 2011-2012 contract offered to Ms. Langford and binds Ms. Langford and the HSD. *See Timpani v. Lakeside Sch. Dist.*, 386 S.W.3d 588, 596 (Ark. Ct. App. 2011).

Traditional contract principles apply to teachers' employment contracts. *Barnett v. Mountain View Sch. Dist.*, 374 S.W.3d 851 (Ark. Ct. App. 2010). The elements of a contract are offer, acceptance, and consideration. *Pruitt v. Dickerson Excavation, Inc.*, 379 S.W.3d 766, 772 (Ark. Ct. App. 2010). The terms of an offer may condition acceptance of the offer. *See, e.g.*, *Rounsaville v. Van Zandt Realtors, Inc.*, 447 S.W.2d 655, 656 (Ark. 1969).

In this case, as noted above, the HSD offered Ms. Langford employment for the 2011-2012 school year when it provided her on May 17, 2011, a copy of her proposed new contract

with the HSD for the 2011-2012 school year.  This proposed new contract, incorporating the HSD's personnel policies, required Ms. Langford to accept the HSD's offer by signing and returning it to the superintendent within 30 days after the offer was issued.  Although the HSD's offer and personnel policies allowed the superintendent discretion to extend the 30 day period, such extension had to be "through written agreement with the employee."  Furthermore, nothing in the policies allows any acceptance other than by signing and returning the proposed contract or offer to the superintendent.  Ms. Langford does not dispute that she failed to sign and return the HSD's proposed contract to Mr. Wilkins.  Accordingly, Ms. Langford did not accept the offer according to the offer's conditions; therefore, no contract existed between the HSD and Ms. Langford.

Ms. Langford contends that Mr. Wilkins orally modified the 2011-2012 proposed contract offered to her by HSD.  Ms. Langford argues that Mr. Wilkins, through conversations with Ms. Langford, changed the date by which and method through which she could accept the contract, allowing her to accept the HSD's offer of employment orally on July 5, 2011.  Even accepting Ms. Langford's allegations as true, her argument is unavailing.

The offer for the 2011-2012 contract came from the HSD, not Mr. Wilkins, the superintendent, or Mr. Bruce, the principal. *Teague v. Walnut Ridge Schools*, 868 S.W.2d 56, 57 (Ark. 1993) ("We begin our analysis by observing that appellant's contract was with appellee, the school board, not with the principal nor the superintendent.").  It is true that "a political subdivision, such as a school district, can only act through its agents . . . ." *Helena-West Helena Sch. Dist. v. Monday*, 204 S.W.3d 514, 516 (Ark. 2005).  Nonetheless, an agent cannot bind his principal to a contract with a third person unless the agent acts within the scope of his authority, whether express, actual, implied, or apparent. *See Ark. Poultry Federation Ins. Trust v.*

*Lawrence*, 805 S.W.2d 653 (Ark. Ct. App. 1991); *Lovelace v. Dir., Emp't Sec. Dep't*, 79 S.W.3d 400, 402 (Ark. Ct. App. 2002).

"Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing."  *Lawrence*, 805 S.W.2d at 657-58.  Apparent authority exists only if the third party, acting as a reasonably prudent person using diligence and discretion, views the *principal's* conduct as giving the agent authority.  *Id.* "Our law is well-settled that an agent acting within the apparent scope of his authority, even though in violation of actual authority, may bind his principal if the one with whom he deals does not have notice of these restrictions."  *Id.*

Here, the HSD's personnel policies gave Mr. Wilkins the express and actual authority to extend the time period by which Ms. Langford could accept the HSD's proposed contract and offer only "through <u>written</u> agreement with the employee."  No record evidence suggests that the HSD's policies or conduct reasonably suggested to Ms. Langford that Mr. Wilkins had the authority to extend orally, without a written agreement, the time by which she could accept the proposed contract.  Moreover, nothing in the HSD's policies or conduct suggested to Ms. Langford that she could orally, without a written agreement, accept the proposed contract and offer.

Instead, by virtue of the HSD's personnel policies—incorporated by statute into Ms. Langford's previous contracts with the HSD and the proposed new contract and offer—Ms. Langford had notice that Mr. Wilkins did not have authority to alter the HSD's proposed new contract or the terms of its acceptance, which had to be in writing.  Ms. Langford has presented no evidence showing that Mr. Wilkins had the authority, apparent or otherwise, to bind the HSD beyond the terms of its proposed new contract and offer of employment to Ms. Langford.  *See*

*Columbia Mut. Cas. Ins. Co. v. Ingraham*, 896 S.W.2d 903, 905 (Ark. 1995) ("Nothing was presented to show they had the authority, apparent or otherwise, to bind [the principal] beyond the terms of the form it had provided . . . ."). Therefore, any oral agreement between Ms. Langford and Mr. Wilkins was ineffective and did not bind the HSD into an employment contract with Ms. Langford for 2011-2012.

For these reasons, because the Certified Personnel Policies of the HSD became a part of the 2011-2012 proposed new contract that the HSD offered to Ms. Langford and because Ms. Langford failed to sign and return the proposed new contract within 30 days after it was issued, the proposed new contract became null and void. The HSD properly declared the position vacant. Mr. Wilkins did not extend the 30-day time period for Ms. Langford to sign and return the proposed new contract through a <u>written</u> agreement with Ms. Langford as expressly called for by the proposed new contract, and any later oral agreement between Ms. Langford and Mr. Wilkins, if any existed, did not alter, vary, or contradict the express written terms of the proposed new contract and offer on this point. With this understanding, the Court will proceed to examine Ms. Langford's claims.

### A.     Title VII And Arkansas Civil Rights Act Claims

Ms. Langford brings claims of reverse race discrimination under Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act ("ACRA"). HSD contends that Ms. Langford's suit was untimely under Title VII and, therefore, that this Court should grant summary judgment in favor of the HSD on Ms. Langford's Title VII and ACRA claims.

Under Title VII and the ACRA, once an employee receives notice from the EEOC that it has dismissed the employee's discrimination charge, the employee has 90 days in which to file suit. 42 U.S.C. § 2000e-5(f)(1); Ark. Code Ann. § 16-123-107 ("Any action based on

employment discrimination . . . shall be brought . . . ninety (90) days of receipt of a 'Right to Sue' letter or a notice of 'Determination' from the [EEOC] . . . ."). "Generally, the ninety-day filing period begins to run on the day the right to sue letter is received at the most recent address that a plaintiff has provided the EEOC." *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989) (citing *St. Louis v. Alverno College*, 744 F.2d 1314 (7th Cir.1984)).

When parties dispute the actual date that an employee received a right-to-sue letter, courts presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1 (1984). The Court notes that, in *Baldwin County Welcome Center v. Brown*, the Supreme Court applied Federal Rule of Civil Procedure 6(e)'s presumption to a right to sue letter. 466 U.S. 147, 148 n. 1 (1984). Rule 6(e) was amended after the *Baldwin* decision, and some courts question whether it still applies to EEOC mailings such as the one at issue here. *See DeFrancesco v. Weir Hazelton, Inc.*, 232 F.R.D. 454, 457-58 (E.D. Pa. 2005) (collecting cases and finding that the majority of courts still follow *Baldwin*). This Court determines *Baldwin* still applies. *See also Waugh v. Potter*, Case No. 406-cv-00827-JCH, 2006 WL 2990499, at *1 (E.D. Mo. Oct. 19, 2006); *Gaither v. Ark. Found. For Med. Care*, Case No. 4:11-cv-576-KGB, 2013 WL 4496439, at *11 (E.D. Ark. Aug. 20, 2013).

Here, the EEOC mailed Ms. Langford's right-to-sue letter on January 31, 2012, from the EEOC's Little Rock office to Ms. Langford's home address in West Memphis, Arkansas. Ms. Langford did not file her complaint until May 4, 2012, which is 94 days after the EEOC mailed its letter. Ms. Langford states that "there is no proof as to when she actually received her 'right to sue' letter" (Dkt. No. 111, at 1). Moreover, in Ms. Langford's affidavit accompanying her

response to HSD's motion for summary judgment, she maintains that she "can't specifically say which day [she] may have actually received the 'right to sue' letter" (Dkt. No. 111-1).

The documents before the Court indicate that the parties dispute the actual date Ms. Langford received her right-to-sue letter.  Therefore, this Court presumes that Ms. Langford received her letter three days after the EEOC mailed it, which would be February 3, 2012.  Ms. Langford filed her complaint in this Court 91 days after February 3, 2012, making her discrimination claims under Title VII and the ACRA untimely.  Furthermore, Ms. Langford has not asked this Court for equitable tolling of Title VII's 90-day limitations period, and even if she had, the Court is not convinced Ms. Langford's circumstances would call for such tolling.  *See Baldwin County*, 466 U.S. at 151 (noting that equitable tolling is appropriate when the plaintiff has received inadequate notice, a motion to appoint counsel is pending, the court leads the plaintiff to believe nothing more is required of her, or there is affirmative misconduct by the defendant).  Therefore, the Court finds that Ms. Langford did not file her discrimination claims under Title VII or the ACRA within the required 90-day limitations period and grants summary judgment to HSD as to those claims.  Even if this Court were to examine the merits of her reverse discrimination claim under Title VII or the ACRA, the Court would grant summary judgment in favor of defendants for the following reasons.

### B.      42 U.S.C. § 1983 And Equal Protection Claims

In employment discrimination cases, the elements of an equal protection claim under 42 U.S.C. § 1983 are the same as those of Title VII and ACRA discrimination claims.  *See Wright v. Rolette County*, 417 F.3d 879, 884-85 (8th Cir. 2005); *Richmond v. Bd. of Regents*, 957 F.2d 595, 598 (8th Cir. 1992); *Island v. Buena Vista Resort*, 103 S.W.3d 671, 675 (Ark. 2003).  A plaintiff in an employment discrimination case may survive a motion for summary judgment through

"proof of 'direct evidence' of discrimination . . . . [or] through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   On the record before the Court, the Court determines Ms. Langford alleges no "direct evidence" of reverse discrimination and, therefore, will examine her claims under the *McDonnell Douglas* analysis.

The United States Supreme Court's decision in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), established the burden-shifting framework for analyzing employment discrimination claims.   Under this framework, "a plaintiff first must establish a prima facie case of discrimination . . . ." *Wilking v. County of Ramsey*, 153 F.3d 869, 872 (8th Cir. 1998).   To establish a *prima facie* case of discrimination under Title VII or the Equal Protection Clause, a plaintiff must show that (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently, or stated differently, that there are facts permitting an inference of discrimination. *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 716 (8th Cir. 2012); *Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006).   Further, in claims alleging reverse discrimination, the plaintiff also must establish "that background circumstances support the suspicion that the defendant is the unusual employer who discriminates against the majority." *Duffy v. Wolle*, 123 F.3d 1026, 1036 (8th Cir. 1997).

On the record evidence, taking Ms. Langford's allegations as true and construing all inferences in her favor, the Court determines Ms. Langford has not established a *prima facie* case of reverse race discrimination.   Ms. Langford was informed of the non-renewal of her 2010-2011

contract but was offered a contract for the 2011-2012 year.  When offered a proposed contract for the 2011-2012 year, however, Ms. Langford did not timely execute and return that proposed contract.  As a result, she suffered no adverse employment action; she was not terminated.  For these reasons, this Court concludes that Ms. Langford was not "replaced" by an African American male who was less qualified (Dkt. No. 112, at 7).  Instead, by the contract's terms and because of her failure to accept the HSD's proposed contract, her position was declared vacant by the HSD.

Further, on the record before the Court, no reasonable juror could conclude that Ms. Langford was a candidate for the counselor position during the 2011-2012 year.  Ms. Langford neither formally applied for the 2011-2012 position nor made "every reasonable attempt to convey [her] interest in the job." *E.E.O.C. v. Audrain Health Care, Inc.*, 756 F.3d 1083, 1087-89 (8th Cir. 2014).  Not only did Ms. Langford fail to accept timely the HSD's proposed contract, but she also continually expressed doubt about whether she wanted to return for the 2011-2012 school year.  Therefore, the Court finds that Ms. Langford has failed to establish a *prima facie* case of discrimination against the HSD.

Even if Ms. Langford could establish a *prima facie* case, the HSD has articulated a legitimate, nondiscriminatory reason for discharging Ms. Langford.  In documents filed with the EEOC and in the record evidence before the Court, the HSD takes the position that Ms. Langford was told that another person had been hired as the K-12 counselor because she failed to return timely her contract (Dkt. Nos. 90, ¶ 29; 88-4, at 32).  The HSD contends that it hired someone else "for the K-12 counselor position only after Langford expressed continual doubt about whether she wanted to return at all for the 2011-12 school year, [and] failed to timely execute and return the contract offered to her" (Dkt. No. 89, at 12).

18

The Court finds that Ms. Langford has presented no record evidence that shows the HSD's stated reason for terminating her employment was a pretext and that race motivated the HSD's decision. "To prove pretext, a plaintiff must both discredit an employer's asserted reason for termination and show that the circumstances permit drawing the reasonable inference that the real reason for terminating the plaintiff was her race." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006).

Ms. Langford has presented no evidence of other employees at the HSD who were involved in or accused of similar conduct—expressing continual doubt about returning to the HSD or failing to execute and return timely a contract to the HSD. She has presented no evidence that the HSD treated her differently than similarly situated African American employees. Ms. Langford has presented no evidence discrediting the HSD's asserted reason for terminating her employment. Instead, she relies solely on her self-serving affidavit claiming that she was given until July 5, 2011, to return the contract and the testimony from other HSD employees in another case. The Court determines that this record evidence does not meet her burden under *McDonnell Douglas*. *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) ("When an employer articulates a nondiscriminatory reason for an [employment action,] the factual inquiry proceeds to a new level of specificity."); *see also Jackson v. UPS*, 643 F.3d 1081, 1088 (8th Cir. 2011) ("A party's 'unsupported self-serving allegation[]' that her employer's decision was based on retaliation does not establish a genuine issue of material fact.'"); *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) ("To establish the existence of a genuine issue of material fact, [a] plaintiff may not merely point to unsupported self-serving allegations. The plaintiff must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." (internal quotation marks omitted)).

Accordingly, the Court grants summary judgment to the HSD on Ms. Langford's claims of discrimination under § 1983 and the Equal Protection Clause of the United States Constitution. Furthermore, because the Court evaluates Ms. Langford's Title VII and ACRA claims under the same standard as her § 1983 claims, for these same reasons the Court would grant summary judgment to the HSD as to Ms. Langford's Title VII and ACRA claims even if those claims were not time-barred.

### C.     Due Process Claims

Ms. Langford claims that the HSD terminated her employment without providing her due process of law. It is not clear to the Court whether Ms. Langford asserts substantive or procedural due process claims. Nonetheless, the Court determines that Ms. Langford's claims fail under both portions of the Due Process Clause.

"The substantive component of the 'Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Singleton v. Cecil*, 176 F.3d 419, 425 (8th Cir. 1999) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). To maintain a substantive due process claim, a plaintiff must either show a violation of such a fundamental right, *id.*, or show that state officials have arbitrarily and oppressively interfered with "a constitutionally protected property interest" in a way that "shocks the conscience." *Novotny v. Tripp County, S.D.*, 664 F.3d 1173, 1178 (8th Cir. 2011) (internal quotation marks omitted); *see also Myers v. Scott Cnty.*, 868 F.2d 1019 (8th Cir. 1989) ("[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases …."). The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible

decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

This Court refuses to expand the concept of substantive due process to include the claims presented by Ms. Langford. Ms. Langford had no constitutionally protected property interest for the 2011-2012 year, as explained below. Further, Ms. Langford has made no argument that the HSD interfered with her fundamental rights, and she has presented no evidence showing that the HSD abused its power in a way that shocks the conscience. *Cf. White v. Smith*, 696 F.3d 740, 757-58 (8th Cir. 2012) ("Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power' rise to this level." (internal quotation marks omitted)). To the extent she raises substantive due process claims, this Court grants summary judgment in favor of HSD on those claims.

To show a violation of procedural due process, a plaintiff must prove (1) that she has an interest protected by the due process clause and (2) that she did not receive adequate procedures. *Clark v. Kansas City, Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004). First, "property interests protected by the Due Process Clause are not created by the Constitution, but rather by independent sources such as state law, municipal ordinance, or contract . . . ." *Singleton*, 176 F.3d at 421-22. To establish a property interest, Ms. Langford "must provide evidence that she had a reasonable and legitimate expectation of continued employment. Her subjective and unilateral expectation that she had a legitimate claim of entitlement to continue" her employment with the HSD is insufficient. *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 803 (8th Cir. 2004) (internal quotation marks omitted).

Ms. Langford does not base her procedural due process claim on the nonrenewal of her 2010-2011 contract. Instead, she focuses her claim on the 2011-2012 proposed new contract.

The HSD argues that Ms. Langford did not have a reasonable expectation of continued employment during the 2011-2012 year.  The HSD contends that she did not sign and return her written contract for that year and, therefore, did not accept the HSD's offer of employment for the 2011-2012 school year.  Ms. Langford claims that Mr. Wilkins expressly allowed her more time to return her contract and instructed her to inform Mr. Bruce or him by the close of business on July 5, 2011, of her intentions to return for the new school year.  Again, Ms. Langford claims that she informed Mr. Bruce of her intent to return the morning of July 5, 2011, and thus, that she accepted the HSD's offer of employment according to Mr. Wilkins's terms.  As discussed above, Ms. Langford did not accept timely and in writing the HSD's offer of employment and, thus, did not have a contract with the HSD to work for the 2011-2012 year.  Ms. Langford was no longer an employee of the HSD.  Accordingly, Ms. Langford did not have a reasonable and legitimate expectation of continued employment for the 2011-2012 year, and her due process claims fail as a matter of law.  *See, e.g.*, *Seal v. Pryor*, 504 F.Supp. 599, 603 (E.D. Ark. 1980) ("Admittedly, there was no contract of employment.  The evidence is totally devoid of any clearly implied promise of continued employment." (internal quotes omitted)).  The Court grants summary judgment to the HSD as to Ms. Langford's procedural due process claims.

### D.    Arkansas Teacher Fair Dismissal Act Claims

Ms. Langford claims that the HSD's termination of her employment violated her rights under the Arkansas Teacher Fair Dismissal Act ("ATFDA") (Dkt. No. 58, at 4).  The ATFDA requires school districts to abide by certain procedures when not renewing a teacher's contract or in dismissing a teacher from employment.  *See* Ark. Code Ann. §§ 6-17-1501, *et seq.*  For example, the ATFDA states that "[a] teacher may be terminated only during the term of any contract . . . for incompetent performance . . . or other just and reasonable cause."  Ark. Code

Ann. § 6-17-1507(a).   The ATFDA also provides certain notice requirements when a superintendent of a school district recommends termination of an employee.  Ark. Code Ann. § 6-17-1507(c).   Further, "[a] teacher who receives a notice of recommended termination or nonrenewal may file a written request with the board of directors of the school district for a hearing."  Ark. Code Ann. § 6-17-1509(a).

The HSD's motion for summary judgment states that the HSD "is entitled to summary judgment on Langford's ATFA [claim] because, as a probationary teacher, Langford is not entitled to prosecute a claim under the ATFA [sic] and because Langford never requested an employment hearing before the school board" (Dkt. No. 88, ¶ 11).  In Ms. Langford's response to the HSD's motion for summary judgment, she "admits the allegations contained in paragraph 11 of the motion [filed by HSD]" (Dkt. No. 111, ¶ 11).  Yet Ms. Langford's response reasserts that she "had good cause to waive her right to a hearing" (Dkt. No. 12, at 5).  Further, Ms. Langford continues to argue that the HSD violated her due process rights, which would include her rights, if any, to notice and an opportunity to be heard according to the ATFDA.  Thus, it is unclear to this Court the extent to which Ms. Langford continues to assert claims under the ATFDA.

Ms. Langford appears to admit that she is a "probationary teacher" under the ATFDA.  Status as a probationary teacher prevents Ms. Langford from asserting procedural protections under the ATFDA as a result of the HSD's non-renewal of her 2010-2011 employment contract.

Nevertheless, Ms. Langford asserts a breach of contract claim against the HSD for 2011-2012, arguing that "the superintendent altered the statutory scheme of returning a written contract within 30 days, and then breached the contract once the offer had been made by the District and accepted by Plaintiff" (Dkt. No. 112, at 6).  The ATFDA creates a right to a hearing

23

for probationary teachers who are terminated.   *Rogers v. Masem*, 788 F.2d 1288, 1293 (8th Cir. 1985) (noting that "the Arkansas Supreme Court specifically ruled that 'the legislative intent was to create a right to a hearing by probationary teachers for termination but not for renewal'" (quoting *Allred v. Little Rock Sch. Dist.*, 625 S.W.2d 487, 489 (Ark. 1981))).   However, as discussed above, Ms. Langford was not terminated for 2011-2012.   Instead, she did not accept timely or in writing the HSD's offer of employment and, therefore, had no contract with the HSD for the 2011-2012 year.   Accordingly, Ms. Langford was neither an employee of the HSD nor terminated by the HSD for 2011-2012.   Thus, Ms. Langford has no claim under the ATFDA as a result of the allegations regarding the 2011-2012 offer of employment.   For these reasons, the Court grants summary judgment to the HSD as to Ms. Langford's ATFDA claims.

### E.   Breach Of Contract Claim

Under Arkansas law, "a person may be liable for breach of contract if the complaining party can prove the existence of an agreement, breach of the agreement, and resulting damages." *Greenwood Sch. Dist. v. Leonard*, 285 S.W.3d 284, 288 (Ark. Ct. App. 2008).   The HSD argues that Ms. Langford's breach of contract claim should be dismissed because Ms. Langford did not attempt to accept the position of counselor until after the 2011-2012 school year had begun and after the HSD had already filled the position with another person,   The HSD argues that, because Ms. Langford did not timely return a signed copy of the 2011-2012 proposed contract that she received in May of 2011, she did not accept this proposed contract.   In her attached affidavit, Ms. Langford contends that "Mr. Wilkins authorized a verbal acceptance from me, as long as I told either he or Mr. Gheric Bruce by the end of the day on July 5th" (Dkt. No. 112, at 7).

Again, Ms. Langford did not accept timely or in writing the HSD's offer of employment for the 2011-2012 school year, and Mr. Wilkins lacked authority to alter the conditions of

acceptance as set forth in the HSD's proposed written contract given to Ms. Langford. Therefore, Ms. Langford did not have an agreement with the HSD for employment during the 2011-2012 year, and her claim of breach of contract fails as a matter of law.  The Court grants summary judgment to the HSD as to Ms. Langford's breach of contract claim.

## IV.     Claims Brought By Michael Manning

Mr. Manning alleges a violation of his civil rights under 42 U.S.C. § 1983, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, Title VII, and the ACRA.

The HSD argues that Mr. Manning did not timely file with the EEOC his reverse race discrimination claims based upon the elimination of the curriculum coordinator position and the HSD's failure to hire him as superintendent and as an elementary teacher.  Accordingly, the HSD contends that these claims are barred under Title VII and the ACRA.  Mr. Manning states that he "agrees that his complaints which arose prior to August 13, 2011, regarding the District's (1) having done away with the curriculum coordinator's position; (2) failure to appoint him as interim superintendent, and (3) failure to hire him as an elementary teacher were not timely presented to the EEOC, and so no argument will be offered on those issues" (Dkt. No. 115, at 1). Because Mr. Manning admits that these claims were untimely, the Court grants the HSD's motion for summary judgment as to Mr. Manning's Title VII and ACRA claims based on these factual allegations.

Mr. Manning's only remaining claims are that the HSD racially discriminated against Mr. Manning by not hiring him for the position of principal, thereby violating § 1983, the Due Process and Equal Protection Clauses, Title VII, and the ACRA.  The HSD contends that Mr. Manning's complaint did not allege a due process or equal protection claim as to the failure to

hire him as principal (Dkt. Nos. 98, at 8; 125, at 5, 7); regardless, all of Mr. Manning's claims against the HSD for failing to hire him as principal fail. For the following reasons, the Court grants the HSD's motion for summary judgment as to Mr. Manning's claims against the HSD for failing to hire him as principal.

### A.    42 U.S.C. § 1983, Equal Protection, And Discrimination Claims

As noted above, in employment discrimination cases, the elements of an equal protection claim under § 1983 are the same as those of Title VII and ACRA discrimination claims. *See Richmond*, 957 F.2d at 598. The HSD asserts that Mr. Manning has failed to support his allegations with any direct evidence of reverse race discrimination. Furthermore, the HSD argues that Mr. Manning cannot establish that the HSD's reason for rejecting Mr. Manning's application was a pretext to hide discriminatory intent. As Ms. Langford did, Mr. Manning points to his own affidavit submitted in this case and to testimony of former HSD employees in other cases that Mr. Manning claims show that the HSD school board members made discriminatory statements against other Caucasian employees. One page of this testimony appears to be from Mr. Bruce and includes Mr. Bruce's statement that Ms. Owens purportedly told him "they wouldn't hire Mr. Manning because he was white" (Dkt. No. 116, at 13). Based on his affidavit and the testimony from another case, Mr. Manning "is satisfied that he has presented a *prima facie* case of race discrimination under the *McDonnell* test" (Dkt. No. 116, at 4).

A plaintiff in an employment discrimination case may survive a motion for summary judgment through "proof of 'direct evidence' of discrimination . . . . [or] through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Torgerson*, 643 F.3d at 1044. Here, most of the excerpts of deposition and trial testimony presented by Mr. Manning do not involve

Mr. Manning's claims of reverse race discrimination or the HSD's hiring of a new principal. At most, these excerpts are evidence that the HSD school board made discriminatory statements in conjunction with adverse employment decisions against employees other than Mr. Manning, Furthermore, even the one-page excerpt that references Mr. Manning is unclear.  This one-page excerpt does not indicate to whom "they" refers and provides no context for what time period or position was being discussed.   This excerpt is merely hearsay evidence suggesting that at least Ms. Owens believed someone might not have hired Mr. Manning for some position at some time due to his race.  The Court determines that, even construing the record evidence in his favor, Mr. Manning has presented no direct evidence that his race caused or motivated the HSD's decision not to hire him as principal.  *Id.*

To establish a *prima facie* case of discrimination, a plaintiff must show that (1) that he is a member of a protected class, (2) that he was qualified for the relevant position, (3) that there was an adverse employment action, and (4) that some evidence of record supports the inference of improper motivation.  *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003). Further, in claims alleging reverse discrimination, the plaintiff also must establish "that background circumstances support the suspicion that the defendant is the unusual employer who discriminates against the majority."  *Duffy*, 123 F.3d at 1036.  After a plaintiff shows a *prima facie* case of discrimination, a defendant has the burden of production "to articulate a legitimate, non-discriminatory reason for the adverse employment action."  *Hannoon*, 324 F.3d at 1046.  If the defendant satisfies this step, the burden returns to the plaintiff, who must "prove that the defendant['s] proffered reason is raised merely as a pretext for discrimination."  *Id.*   In its analysis, this Court may bypass analysis of the *prima facie* case where the facts permit easy disposition under a later stage of the *McDonnell Douglas* test.  *Id.*

The HSD states that it "did not hire Manning because it selected Clarence Saulsberry, whom it considered to be the most qualified applicant, for the principal position" (Dkt. No. 98, at 18). In Mr. Manning's deposition, counsel for the HSD asked him what evidence he had of racial bias in the district's hiring for the principal position. Mr. Manning responded: "They hired two administrators, two principals, and both were black, two out of two" (Dkt. No. 97-1, at 35). When asked if there was any other evidence, Mr. Manning replied, "I'm sure there is, but I cannot think of anything right now" (Dkt. No. 97-1, at 35). Mr. Manning has presented no record evidence to this Court that shows the HSD's proffered reason for hiring Mr. Saulsberry instead of Mr. Manning as principal for the 2012-2013 school year is a pretext for discrimination. Mr. Manning has presented no record evidence and made no arguments refuting Mr. Saulsberry's qualifications for the position. Therefore, on the record evidence before the Court and drawing all reasonable inferences in favor of Mr. Manning, the Court grants the HSD's motion for summary judgment as to Mr. Manning's equal protection and reverse race discrimination claims concerning the HSD's hiring of Mr. Saulsberry.

In his response to the HSD's motion for summary judgment, Mr. Manning also purports to claim that the HSD discriminated against him when the district chose Sheryl Owens as the interim principal for the 2011-2012 school year. Mr. Manning's affidavit attached to his response states that Ms. Owens was not qualified for the position of interim K-12 principal. Mr. Manning states that "to become a principal, [Ms. Owens] had to apply to the Board of Education for a waiver, which can only occur on the applicant's promise that she complete course work to qualify for the certificate, as she is not listed as qualified for the K-6 principal's certification" (Dkt. No. 116, at 6). Moreover, Mr. Manning claims that Ms. Owens "should not have been granted a waiver, because she had not—as promised—completed the hours necessary to qualify

her for the K-6 principal's job" (Dkt. No. 116, at 6).   Mr. Manning also states that "[t]he Board, to hire Owens, had to state that no one else was available.   That, of course, was untrue, as I was certified and available for both jobs" (Dkt. No. 116, at 6).

For its reasons in hiring Ms. Owens, the HSD states in its reply that the school board had "to hurriedly fill such an important role on an interim basis" and looked "to someone familiar with the District and experienced with the position to be filled" (Dkt. No. 125, at 4).   As evidence of Ms. Owens's experience, the HSD points to testimony from Mr. Bruce in a previous trial, which Mr. Manning attached as an exhibit to his response.   In this testimony, Mr. Bruce stated that "[t]here were two principals before I got there.   One was elementary, and one was high school" (Dkt. No. 116, at 13).   Further, Mr. Bruce stated that "[Ms. Owens] was principal before I got there" and that "her certification was high school" (Dkt. No. 116, at 13).   The HSD also states that "Manning had no experience serving as a principal within the District" (Dkt. No. 125, at 4).

The Court finds that Mr. Manning has presented no evidence discrediting or refuting the HSD's proffered reason for hiring Ms. Owens—the immediate need to fill the position in an interim manner and Ms. Owens's experience as a high school principal for the HSD.   Mr. Manning has presented no evidence that these reasons were false or that race was the reason for hiring Ms. Owens as the interim principal instead of Mr. Manning.   Rather, Mr. Manning's exhibit to his response confirms that Ms. Owens had experience as a high school principal at the HSD (Dkt. No. 116, at 14).   Furthermore, Mr. Manning does not dispute the fact that, months prior to Ms. Owens becoming the interim principal, the HSD offered Mr. Manning a teaching position, which he declined. The Court concludes that Mr. Manning has failed to present

evidence that would create a genuine issue of material fact on whether the HSD's proffered reason for hiring Ms. Owens was pretextual.

Mr. Manning has not met his burden to show that the HSD's proffered reason was pretext. *Gibson*, 670 F.3d at 856 ("When an employer articulates a nondiscriminatory reason for an [employment action,] the factual inquiry proceeds to a new level of specificity."). Mr. Manning cannot avoid summary judgment by pointing to unsupported allegations in his self-serving affidavit. *See, e.g.*, *Jackson*, 643 F.3d at 1088 ("A party's 'unsupported self-serving allegation[]' that her employer's decision was based on retaliation does not establish a genuine issue of material fact.'"); *Smith*, 523 F.3d at 848 ("To establish the existence of a genuine issue of material fact, [a] plaintiff may not merely point to unsupported self-serving allegations. The plaintiff 'must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." (internal quotation marks omitted)). Therefore, the Court grants the HSD's motion for summary judgment as to Mr. Manning's reverse race discrimination claims.

### B.    Due Process Claims

Mr. Manning also contends that the HSD's failure to hire him as principal violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. It is not clear to the Court whether Mr. Manning asserts substantive or procedural due process claims; Mr. Manning's claims fail under both portions of the Due Process Clause.

For the reasons explained below, Mr. Manning did not have a protected property interest in the principal position. Further, this Court refuses to expand the concept of substantive due process to include the claims presented by Mr. Manning. Mr. Manning has made no argument that the HSD interfered with his fundamental rights, and he has presented no evidence showing that the HSD abused its power in a way that shocks the conscience. *Cf. White*, 696 F.3d at 757-

58. The HSD formed a hiring committee to fill the position of principal and interviewed several candidates for the position, including Mr. Manning. Nothing in the record indicates that this action was arbitrary or capricious, much less conscience shocking, egregious, or extraordinary.

The Court will next examine whether the HSD's failure to hire Mr. Manning as principal violated his procedural due process rights. To pursue such a claim, a plaintiff must provide evidence of a reasonable and legitimate expectation of employment. *Howard*, 363 F.3d at 803. A plaintiff's subjective and unilateral expectation is insufficient. *Id.* In this case, Mr. Manning never acquired the position of principal; he never received an interest in this position through a contract or any other means. *See Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011) ("Whether the employee had a legitimate claim of entitlement . . . depends on state law and the terms of his employment."); *Holloway v. Reeves*, 277 F.3d 1035, 1038 (8th Cir. 2002) (finding that an employee's claim of entitlement must be "sufficiently certain so as to amount to a constitutionally protected property interest"); *Buchanan v. Little Rock School District of Pulaski Co., Ark.*, 84 F.3d 1035, 1038 (8th Cir. 1996) (holding that a claimant must demonstrate that there were "rules or mutually explicit understandings that support [her] claim of entitlement" to her position or benefit). Mr. Manning's desire for this position was nothing more than a unilateral expectation of employment with the HSD. *See Howard*, 363 F.3d at 803. Because Mr. Manning had no protected property interest in the principal position, the Court grants the HSD summary judgment as to Mr. Manning's procedural due process claims, as well.

## V.    Claims Brought By Dovie Wolf

Ms. Wolf alleges that the HSD racially discriminated against her in violation of her civil rights and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Ms. Wolf also claims that the HSD's removal of her position

violated the Arkansas Public School Employee Fair Hearing Act and constituted a breach of her contract with the HSD.

### A.   42 U.S.C. § 1983, Equal Protection, And Discrimination Claims

Although her complaint is unclear, Ms. Wolf appears to assert claims of discrimination under 42 U.S.C. § 1983, the Equal Protection Clause, Title VII, and the ACRA.  The Court evaluates these claims under the same standard. *See Wright v. Rolette County*, 417 F.3d 879, 884-85 (8th Cir. 2005); *Richmond v. Bd. of Regents*, 957 F.2d 595, 598 (8th Cir. 1992); *Island v. Buena Vista Resort*, 103 S.W.3d 671, 675 (Ark. 2003).  In this case, the Court finds that Ms. Wolf has presented no direct evidence of discrimination.  As with Ms. Langford and Mr. Manning's allegations, Ms. Wolf's reliance alone on testimony of former HSD employees in other cases that shows the HSD school board members made discriminatory statements against other Caucasian employees is insufficient.  *See Torgerson*, 643 F.3d at 1044.

Ms. Wolf also has failed to establish a *prima facie* case of reverse race discrimination here because she has presented no facts or proof that would permit an inference that the HSD eliminated the RN position because of her race.  Ms. Wolf asserts that the HSD's elimination of the RN position violates Arkansas law and that this shows the HSD discriminated against Ms. Wolf by eliminating that position in favor of keeping the LPN position, which was occupied by Ms. Williams, an African-American.  Yet Ms. Wolf does not dispute that Ms. Williams's salary was significantly less than Ms. Wolf's salary, a fact that is consistent with the HSD's stated reason for removing the RN position.  Even if the HSD's elimination of the RN position violated Arkansas law, this is not alone proof of racial discrimination or evidence of pretext.  *See Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 685-86 (8th Cir. 2002) ("Employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees,

or even unsound business practices."). "[E]mployment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995).

Assuming for the purposes of resolving this motion only that Ms. Wolf could present a *prima facie* case of discrimination, she has presented no admissible evidence showing that the HSD's stated reasons for eliminating the RN position were pretextual.  The HSD states that its reasons for eliminating the RN position were to save costs and to act in accordance with its reduction in force plans.  Ms. Wolf has presented her own affidavit in which she claims that "Wilkins' [sic] decision, according to him, was not based on financial reasons" (Dkt. No. 114, at 6).  Yet Ms. Wolf has presented no record evidence to support this allegation or to support her contention that race was the real motivation behind the HSD's decision.  Ms. Wolf's unsupported and generalized allegations about the motivations for Mr. Wilkins's decision—presumably to recommend to the HSD that it remove the RN position—does not reflect directly on the HSD Board's ultimate reasons for removing the position.  Moreover, Ms. Wolf's letter to the EEOC states that she "was recently told by the District that [she] would not be employed next school year, due to RIF (reduction in force)" (Dkt. No. 91-2).  This earlier representation by Ms. Wolf to the EEOC also appears to contradict  the affidavit she submitted in this case and her representations in her response to the HSD's motion for summary judgment that the HSD "Board couldn't come up with [a reason for her dismissal] at her hearing" (Dkt. No. 114, at 3).

Ms. Wolf has not met her burden to show that the HSD's proffered reason was pretext. *Gibson*, 670 F.3d at 856 ("When an employer articulates a nondiscriminatory reason for an [employment action,] the factual inquiry proceeds to a new level of specificity."). Ms. Wolf

cannot defeat a motion for summary judgment by only pointing to unsupported allegations in her self-serving affidavit.  *See, e.g.*, *Jackson*, 643 F.3d at 1088 ("A party's 'unsupported self-serving allegation[]' that her employer's decision was based on retaliation does not establish a genuine issue of material fact.'"); *Smith*, 523 F.3d at 848 ("To establish the existence of a genuine issue of material fact, '[a] plaintiff may not merely point to unsupported self-serving allegations.' The plaintiff 'must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.'").  Therefore, the Court grants the HSD's motion for summary judgment as to Ms. Wolf's racial discrimination claims.

### B.   Due Process Claims

Ms. Wolf asserts a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  It is unclear whether she intends this as a substantive or procedural due process claim.  For the following reasons, this Court determines that her claims fail under both portions of the Due Process Clause.

To the extent Ms. Wolf makes a substantive due process claim, that claim fails as she has neither stated a constitutionally protected property interest nor demonstrated government action that shocks the conscience.  *See Novotny v. Tripp County, S.D.*, 664 F.3d 1173, 1178 (8th Cir. 2011).

To establish a violation of procedural due process, a plaintiff must prove (1) that she has an interest protected by the due process clause and (2) that she did not receive adequate procedures.  *Clark*, 375 F.3d at 701.  Moreover, a plaintiff must provide evidence of a reasonable and legitimate expectation of employment.  *Howard*, 363 F.3d at 803.  A plaintiff's subjective and unilateral expectation is insufficient.  *Id.*  In this case, Ms. Wolf claims that former HSD Superintendent Ray Nassar told her it was "safe" for her to buy a house in Hughes, Arkansas,

and that based on Mr. Nassar's statement, she purchased a home in Hughes.   Ms. Wolf apparently argues that Mr. Nassar's statement gave her the expectation of continued employment at the HSD.   Yet Ms. Wolf admits that she did not have a contract with the HSD beyond the 2010-2011 school year.   Ms. Wolf's purported expectation does not exceed the subjective and unilateral expectation that is insufficient to become a constitutionally protected property interest; her procedural due process claims fail as a result.   Therefore, the Court grants summary judgment in favor of the HSD as to Ms. Wolf's due process claims.

### C.   Arkansas Public School Employee Fair Hearing Act Claim

Ms. Wolf also purports to bring a claim under the Arkansas Public School Employee Fair Hearing Act ("Fair Hearing Act").   This Act states:

> (a) The superintendent of a school district may recommend . . . the nonrenewal of a full-time nonprobationary employee's contract provided that he or she gives notice in writing, personally delivered or by letter posted by registered or certified mail to the employee's residence address as reflected in the employee's personnel file.
>
> (b) The recommendation of nonrenewal of a full-time nonprobationary employee's contract shall be made no later than thirty (30) calendar days prior to the beginning of the employee's next contract period.
>
> (c) Such written notice shall include a statement of the reasons for the proposed termination or nonrenewal.
>
> (d) The notice shall further state that an employee being recommended for termination or a full-time nonprobationary employee being recommended for nonrenewal is entitled to a hearing before the school district board of directors upon request provided that the request is made in writing to the superintendent within twenty-five (25) calendar days from receipt of the notice.

Ark. Code Ann. § 6-17-1703.

Furthermore, the Fair Hearing Act requires a school board to conduct a hearing "no fewer than five (5) nor more than ten (10) days after the written request has been received by the superintendent . . . and . . . shall be public or private at the request of the employee."   Ark. Code

Ann. § 6-17-1705(a).  "[T]he General Assembly promulgated the Act to protect noncertified school employees' rights to notice and opportunity to be heard by providing a reasonable hearing procedure when termination or nonrenewal is imminent."  *Small v. Cottrell*, 964 S.W.2d 383, 386 (Ark. 1998).  A school district has met its obligations under the Fair Hearing Act by "substantial compliance" with the act.  *Id.*

The HSD states that Mr. Wilkins sent a letter to Ms. Wolf informing her that her contract would not be renewed and notifying her of her right to a hearing before the school board upon her request.  Ms. Wolf requested a private hearing, which was held on May 5, 2011.  Ms. Wolf does not expressly address the Fair Hearing Act in her response to the HSD's motion for summary judgment.  It is unclear to this Court how she contends the Fair Hearing Act was purportedly violated by the HSD.  Ms. Wolf does allege that Mr. Wilkins did not give a reason for her dismissal and that "the Board couldn't come up with [a reason] either at her hearing" (Dkt. No. 114, at 3).  This allegation made in response to the HSD's motion for summary judgment is contrary to record evidence before the Court regarding the HSD's district-wide reduction in force as the reason for Ms. Wolf's nonrenewal and the cost savings accomplished by the HSD's elimination of Ms. Wolf's position.

Because Ms. Wolf fails to address her claims under the Fair Hearing Act in her response to the HSD's motion for summary judgment and given the record evidence before the Court, the Court grants summary judgment to the HSD as to Ms. Wolf's claim under the Fair Hearing Act.

### D.     Breach Of Contract Claim

To state a claim for breach of contract, Ms. Wolf must show "the existence of an agreement, breach of the agreement, and resulting damages."  *Greenwood*, 285 S.W.3d at 288.  Here, Ms. Wolf "concede[s] that [she] was not under a contract for the 201-202 [sic] school

year" (Dkt. No. 114, at 4).  Yet Ms. Wolf states that "she had a right to the *expectancy* of such a contract" based upon her aforementioned conversation with Mr. Nassar.  Ms. Wolf's unilateral expectancy of a contract does not rise to the level of an enforceable agreement with the HSD. An oral conversation like the one Ms. Wolf alleges to have occurred is far too indefinite to enforce under Arkansas contract law.  *See Ultracuts Ltd. V. Wal-Mart Stores, Inc.*, 16 S.W.3d 265 (Ark. Ct. App. 2000), *aff'd in part, rev'd in part on other grounds*, 33 S.W.3d 128 (Ark. 2000).  Thus, the Court grants summary judgment to the HSD as to Ms. Wolf's breach of contract claim.

## VI.    Conclusion

For the following reasons, the Court grants HSD's motion for summary judgment against Ms. Langford (Dkt. No. 88); grants HSD's motion for summary judgment against Mr. Manning (Dkt. No. 97); and grants HSD's motion for summary judgment against Ms. Wolf (Dkt. No. 91). Accordingly, all other pending motions regarding Ms. Langford, Mr. Manning, and Ms. Wolf's case against the HSD are denied as moot (Dkt. Nos. 123, 128, 130, 132, 135, 137, 142).

SO ORDERED this 21st day of April, 2015.

_Kristine G. Baker_
_____
Kristine G. Baker
United States District Judge